# EXHIBIT A

Hearing Date: <<CmsHearingStart>>
Location: <<CmsHearingResource="Location">>
Judge: <<CmsHearingResource="JudicialOfficer">>

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

FILED
8/30/2024 8:07 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH08282
Calendar, 13
29187038

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

**Summons - Alias Summons** (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

KIRSTEN CURLEY

(Name all parties)

v.

VEROGEN, INC.

c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

Case No. **2024CH08282**

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

**Summons - Alias Summons**             **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 56618

Atty Name: McGuire Law, P.C.

Atty. for: Plaintiff

Address: 55 W. Wacker Dr., 9th Fl.

City: Chicago

State: IL    Zip: 60601

Telephone: (312) 893-7002

Primary Email: jdunklin@mcgpc.com

Witness: _____

8/30/2024 8:07 PM IRIS Y. MARTINEZ

_____

IRIS Y. MARTINEZ, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 8/30/2024 8:07 PM 2024CH08282

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Hearing Date: <<CmsHearingStart>>
Location: <<CmsHearingResource="Location">>
Judge: <<CmsHearingResource="JudicialOfficer">>

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

FILED
8/30/2024 8:07 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH08282
Calendar, 13
29187038

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

KIRSTEN CURLEY, individually and on behalf of similarly situated individuals,

    *Plaintiff,*

    v.

VEROGEN, Inc., a Delaware corporation,

    *Defendant.*

)
)
)
)
)
)
)
)
)
)
)

No.

    **2024CH08282**

Hon.

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

Plaintiff Kirsten Curley brings this Class Action Complaint on behalf of herself and all others similarly situated individuals against Verogen, Inc. D/B/A GEDmatch.com ("GEDmatch", "Verogen" or "Defendant") for its violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("GIPA"), and to obtain redress for persons injured by its conduct. Plaintiff alleges the following based on personal knowledge as to Plaintiff's own experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.    This case concerns the illegal disclosure of the identities of thousands of individuals who were subjected to genetic tests and related other personally identifying information by Defendant GEDmatch, an online company that specializes in DNA analysis.

2.    Plaintiff Kirsten Curley brings this lawsuit on behalf of all similarly situated persons to address Defendant's illegal disclosure of her identity and the fact that she was the subject of a genetic test (herein "Genetic Information"). Unbeknownst to Plaintiff, Defendant

1

FILED DATE: 8/30/2024 8:07 PM    2024CH08282

had authorized and placed certain tracking and disclosure technology on its website, GEDmatch.com, which disclosed Plaintiff's Genetic Information to third parties.

3. Defendant's disclosure of Plaintiff's and Class members' Genetic Information was not accidental. Rather, Defendant actively chose to disclose the Genetic Information through its use of sophisticated online tracking technologies geared towards increasing the effectiveness of its online marketing strategy.

4. In enacting GIPA, the Illinois legislature recognized that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." See 410 ILCS 513/5(2).

5. Genetic information about a person, including the fact that someone took a genetic test, is among the most confidential and sensitive information in our society, and the mishandling of such information can have serious consequences, including heightened risks for discrimination in the workplace, denial of insurance coverage, and data exposures leading to irreversible privacy harms.

6. Recognizing these concerns, Illinois implemented the Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq*., to protect the privacy of individuals' genetic testing information.

7. GIPA provides that genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized in writing by that individual to receive the information. See 410 ILCS 513/15(a).

FILED DATE: 8/30/2024 8:07 PM  2024CH08282

8.      GIPA further provides that no person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test. See 410 ILCS 513/30(a).

9.      In other words, GIPA's requirements bestow a right to privacy to not be identified for having a genetic test performed, a right to privacy to their genetic information, and a right to prevent the disclosure of such information without their consent.

10.     Defendant owns and controls GEDmatch.com, a website that permits users to upload their DNA data files from different DNA testing companies in order to, among other things, identify unknown family members and explore their genetics.

11.     Unfortunately for Plaintiff and other similarly situated individuals, embedded in Defendant's website were surreptitious analytical tools which were used to gather and disclose their confidential information, including Genetic Information, in order to better permit GEDmatch to engage in highly targeted online advertising.

## JURISDICTION AND VENUE

12.     The Circuit Court of Cook County, Illinois may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Verogen is doing business within Illinois, and because Plaintiff's claims arise out of Defendant's unlawful Illinois actions, as it disclosed Plaintiff's Genetic Information in Illinois.

13.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Verogen is doing business in Cook County and thus resides there under § 2-102, and because the illegal disclosure of Genetic Information out of which this cause of action arises occurred in Cook County.

## THE PARTIES

14.     Plaintiff Kirsten Curley is a citizen of the State of Illinois and has at all times resided in Skokie, Illinois.

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

15. Verogen Inc. d/b/a GEDmatch is a company organized under the laws of Delaware.

**FACTUAL ALLEGATIONS**

16. GEDmatch is a company that provides DNA comparison services and tools, and operates the website GEDmatch.com.

17. GEDmatch advertises that GEDmatch.com is "the place to explore your family history by matching DNA data you can get from a genetic DNA testing kit company like 23andMe or AncestryDNA."[1]

18. To use GEDmatch.com, users take a genetic test (from a variety of companies or providers) and download the results of that test to a standard DNA file—*i.e.*, a compressed ZIP file containing a full description of the user's genetic information.[2] Next, users upload the DNA file to the GEDmatch website for processing. Within 24 hours, users can access analytical tools that compare their own genetic information to other DNA files within the GEDmatch database.[3], [4]

19. GEDmatch tells its users that "your privacy and security are paramount."[5] To reassure users about the privacy of information submitted on its site, GEDmatch encourages users to use aliases and anonymous email addresses when using the site.[6]

---

[1] https://www.GEDmatch.com/why-join/ (last visited Mar. 20, 2024).

[2] *See, e.g.,* Downloading DNA Data, Ancestry.com, https://support.ancestry.com/s/article/Downloading-DNA-Data?language=en_US (last visited Mar. 20, 2024).

[3] "Introduction to GEDmatch: How to Get Started, Upload Your DNA, Find Relatives, Find Matches," GEDmatch, https://www.youtube.com/watch?v=_NduRUO1GMw&t=53s (last visited Mar. 20, 2024).

[4] "How it Works, Find Family Members From Around the World Using DNA Matching: https://www.gedmatch.com/how-it-works/ (last visited March 23, 2024).

[5] *Is GEDmatch Safe*?, GEDmatch, https://www.GEDmatch.com/privacy-security/ (last visited Mar. 21, 2024).

[6] *Id.*

4

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

20.    However, unbeknownst to GEDmatch users, Defendant used technology pioneered by Meta Platforms, Inc. (parent company of Facebook herein "Meta" or "Facebook"), including the Facebook Pixel ("Pixel"), a piece of tracking code, embedded on thousands of websites, including that of GEDmatch, to illegally disclose the confidential Genetic Information of Plaintiff.

21.    The Pixel operates on GEDmatch.com in the background pursuant to an undisclosed written agreement between GEDmatch and Facebook. By virtue of such agreement GEDmatch disclosed users' identities and the fact that they were subjected to genetic tests to Facebook. Not only that, such information is also associated with all other Personally Identifiable Information in Facebook's possession including their names, unique and persistent Facebook ID's, ("FID") and IP addresses.[7],[8]

22.    By default, the Pixel uses both first-party and third-party cookies to transmit website visitors' information to Facebook, and Facebook's Conversions Application Programming Interface ("CAPI") is automatically implemented when websites—such as GEDmatch—install the Pixel on their Website servers.[9]

23.    Unlike the Facebook Pixel, CAPI does not transmit any information via the web browser. Instead, CAPI tracks the user's website interactions and communications, records and

---

[7] The Pixel forces the website user to share the user's FID for easy tracking via the "cookie" Facebook stores every time someone accesses their Facebook account from the same web browser. "Cookies are small files of information that a web server generates and sends to a web browser." "Cookies help inform websites about the user, enabling the websites to personalize the user experience." https://www.cloudflare.com/learning/privacy/what-are-cookies/ (last visited Apr. 25, 2023).

[8] The FID is categorized as a third-party cookie, and it identifies a particular person and their actions or communications with a website, such as www.GEDmatch.com, whenever the owner of that website has installed the Facebook Pixel.

[9] "CAPI works with your Facebook pixel to help improve the performance and measurement of your Facebook ad campaigns." *See How to Implement Facebook Conversions API,* FETCH&FUNNEL, https://www.fetchfunnel.com/how-to-implement-facebook-conversions-api-in-shopify/ (last visited March 20, 2024).

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

stores that information on the website owner's servers, and then transmits the data to Facebook directly from the website owner's servers.[10, 11]

24.     Because CAPI is located on the website owner's servers and not the website user's browser, it allows GEDmatch to collect and disclose website users' information to Facebook even if the user employs ad blockers or other denials of consent.

25.     Plaintiff and other Class members who uploaded their DNA files to GEDmatch's website thought they were communicating only with GEDmatch. But Defendant, through the Pixel and/or CAPI, surreptitiously disclosed their identities and the fact that they were the subject of genetic tests to Facebook.

26.     Thus, Defendant is illegally disclosing individuals' identities and some of their most confidential Genetic Information. The information disclosed is exactly the kind of Genetic Information protected under GIPA.

27.     GEDmatch disclosed Plaintiff's and Class members' Genetic Information to Facebook in order to better create targeted advertisements based on the information Plaintiff and the Class members shared with GEDmatch, and all other information available to Facebook, including through GEDmatch, the Class members' Genetic Information.

28.     Reasonable persons simply do not anticipate that their Genetic Information will be disclosed to an unauthorized third party – let alone Facebook, which has a sordid history of privacy violations in pursuit of ever-increasing advertising revenue. Neither Plaintiff nor any other Class

---

[10] *What is the Facebook Conversions API and how to use it*, https://revealbot.com/blog/facebook-conversions-api/ (last visited March 20, 2024).

[11] "Server events are linked to a dataset ID and are processed like events sent via the Meta Pixel…. This means that server events may be used in measurement, reporting, or optimization in a similar way as other connection channels.", *Conversions API,* META FOR DEVELOPERS, https://developers.facebook.com/docs/marketing-api/conversions-api (last visited March 20, 2024).

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

member signed a written authorization permitting GEDmatch to disclose their Genetic Information
to anyone, let alone Facebook.

29.     As a result of Defendant's conduct, Plaintiff seeks to remedy these harms and
brings a cause of action for violations of GIPA, 410 ILCS 513/1, *et seq*.

30.     When a person visits a website that is hosting the Pixel, the Pixel begins
"listening in," much like a traditional wiretap, as soon as the website loads. The Pixel lies hidden
within the page, waiting to be triggered.

31.     Thus, the Pixel was triggered each time Plaintiff and Class members
communicated with GEDmatch, in the form of HTTP Requests to the GEDmatch server. Upon
triggering of the Pixel, Facebook secretly intercepted the user's communications at the same time
the message was dispatched to GEDmatch. Thus, two simultaneous communications originate
from a user's browser once the user initiates an action GEDmatch: one, as intended, to
GEDmatch, and a second, undetectable to and unknown by the user, to Facebook.

**A.      Plaintiff Kirsten Curley's Genetic Information Was Disclosed by GEDmatch**

32.     In early 2022, Plaintiff Curley uploaded her DNA file to the GEDmatch website.
In doing so, Plaintiff communicated information relating to her identity and, crucially, the fact
that she had been the subject of a genetic test—all of which consist of Genetic Information and
is protected under GIPA. Without her knowledge or permission, Defendant disclosed this
Genetic Information, through use of Facebook's business tools (including Pixel and CAPI) to
Facebook without her consent.

33.     Plaintiff reasonably expected that her communications with GEDmatch via its
website were confidential, solely between herself and GEDmatch, and that such communications
would not be disclosed to any third party.

7

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

34.     Plaintiff has an active Facebook account that she accesses through her phone and desktop computer. Plaintiff's Facebook account contains information that can personally identify her, including her name.

35.     Because the GEDmatch website utilizes the Facebook Pixel, the Website's Source Code sent a secret set of instructions back to Plaintiff's browser—which effectively acted as a wiretap—causing the Pixel to send Plaintiff's Facebook ID ("FID"), and the webpage's URL, and the contents of her communications to Defendant (including Genetic Information contained within those communications).

36.     Specifically, when Plaintiff Curley uploaded her DNA file to the GEDmatch website, and by operation of Facebook's agreement with GEDmatch and through the Pixel, Defendant disclosed Plaintiff's communications with GEDmatch, including the fact that she uploaded her DNA file and her identity. Additionally, the information disclosed by GEDmatch via the Pixel included Plaintiff's FID, linking her communications with her Facebook profile.

37.     Defendant facilitated these disclosures without Plaintiff's knowledge, consent, or express written authorization. By failing to receive the requisite consent, Defendant breached its obligations under GIPA.

38.     Upon information and belief, Facebook also received Plaintiff's information directly through the Conversions API, which established a server-to-server data transmission from GEDmatch's Website server.

39.     Plaintiff has a continuing interest in ensuring that future communications with GEDmatch are protected and safeguarded from future unauthorized compulsions and disclosures, and that Defendant ceases its illegal disclosure of Genetic Information.

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

40.     As a result of Defendant's disclosure of the identities of thousands of Illinois consumers who had a genetic test performed without their written consent, including that of Plaintiff and the other Class members, Defendant has violated GIPA.

## CLASS ACTION ALLEGATIONS

41.     Pursuant to 735 ILCS 5/2-801 Plaintiff brings this action on behalf of herself and on behalf of a class (the "Class") defined as follows:

> **Class:** All Illinois individuals who, during the applicable statute of limitations, (i) had a Facebook account; and (ii) uploaded their DNA file to GEDmatch.com according to Defendant's records.

42.     Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

43.     Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

44.     <u>Numerosity/Ascertainability</u>. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class members is unknown to Plaintiff currently. However, it is estimated that there are thousands of individuals in the Class. The identity of such membership is readily ascertainable from Defendant's records and non-party records, including the records of Facebook.

45.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class and because Plaintiff used the GEDmatch website and had her Genetic Information disclosed   without her express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class members.

9

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

46.     <u>Adequacy</u>. Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class members. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class members.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the Class members.

47.     <u>Common Questions of Law and Fact Predominate/Well Defined Community of Interest</u>. Questions of law and fact common to the Class members predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct.  The following questions of law and fact are common to the Class:

(a)     Whether Defendant's conduct is subject to GIPA;

(b)     Whether Defendant disclosed Plaintiff's and the Class members' Genetic Information;

(c)     Whether Defendant discloses Genetic Information to advertisers and/or other third parties;

(d)     Whether Defendant obtained written authorization from Plaintiff and the other Class members before disclosing their Genetic Information;

(e)     Whether Defendant's violations of GIPA were willful or reckless;

(f)     Whether Defendant's violations of GIPA were negligent;

(g)     Whether Plaintiff and the Class members are entitled to damages and injunctive relief.

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

48.     <u>Superiority</u>. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff is unaware of any special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

### CAUSE OF ACTION
**Violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, et seq.**
**(On behalf of Plaintiff and the Class)**

49.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and bring this count individually and on behalf of the proposed Class.

50.     Defendant Verogen, Inc. is a corporation and, therefore, a "person" under 410 ILCS 513/10.

51.     The information that Defendant obtained from Plaintiff and the Class is the type of information protected by GIPA. 410 ILCS 513/10.

52.     GIPA states that no person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test. See 410 ILCS 513/30(a).

53.     Plaintiff and the members of the Class are individuals who uploaded their DNA data files to GEDmatch.

54.     Defendant, through the use of the Facebook Pixel and CAPI, disclosed Plaintiff's and Class members' Genetic Information which consists of the fact that they uploaded their genetic

11

FILED DATE: 8/30/2024 8:07 PM  2024CH08282

information and had a genetic test performed and their identities to Facebook and/or other unapproved third parties.

55.     In other words, Defendant disclosed Plaintiff and the other Class members' identities who had been the subject of genetic tests. See 410 ILCS 513/30(a).

56.     Defendant failed to obtain written authorization from Plaintiff or the members of the Class to disclose their Genetic Information, as required by 410 ILCS 513/30(a) and 410 ILCS 513/35.

57.     Plaintiff and the other Class members have been aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information as set forth in GIPA when Defendant disclosed their identities without their consent.

58.     Defendant's violations of GIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with GIPA.

59.     On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with GIPA's requirements; (2) statutory damages of $15,000 for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(a)(2) or, in the alternative, statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410 ILCS 513/40(a)(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(a)(3).

## RELIEF REQUESTED

Plaintiff, on behalf of herself and the proposed Class, respectfully requests that the Court enter an Order:

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

(a)     Certifying this action as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

(b)     Declaring that Defendant's actions violate GIPA, 410 ILCS 513/1, *et seq.*;

(c)     Awarding Plaintiff and the Class statutory damages of $15,000.00 for each and every intentional and /or reckless violation of GIPA pursuant to 410 ILCS 513(40)(a)(2), or alternatively, statutory damages of $2,500 for each and every violation pursuant to 410 ILCS 513(40)(a)(1) if the Court finds that Defendant's violations were negligent;

(d)     Awarding injunctive and other equitable relief as is necessary pursuant to 410 ILCS 513(40)(a)(4) to protect the interests of the Class;

(e)     Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of other litigation expenses, pursuant to 410 ILCS 513/40(a)(3);

(f)     Awarding Plaintiff and the Class and pre- and post-judgment interest, to the extent allowable; and

(g)     Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Class, demand a trial by jury for all the claims asserted in this Complaint so triable.

Dated: August 30, 2024                    Respectfully Submitted,

                                          KIRSTEN CURLEY, individually and on
                                          behalf of a class of similarly situated individuals


                          By:     /s/ Joseph M. Dunklin
                                  *One of Plaintiff's Attorneys*

FILED DATE: 8/30/2024 8:07 PM   2024CH08282

McGuire Law, P.C.
Myles McGuire
David L. Gerbie
Andrew Heldut
Joseph M. Dunklin
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
dgerbie@mcgpc.com
aheldut@mcgpc.com
jdunklin@mcgpc.com

Lynch Carpenter, LLP
Katrina Carroll
katrina@lcllp.com
Kyle Shamberg
kyle@lcllp.com
111 W. Washington St., Ste. 1240
Chicago, IL 60602
Tel.: (312) 750-1265

Freed Kanner London
& Millen LLC
Jonathan M. Jagher
jjagher@fklmlaw.com
923 Fayette Street
Conshohocken, PA 19428
Tel.: (610) 234-6486

*Attorneys for Plaintiff and the Putative Class*

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

FILED
9/3/2024 3:48 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH08282
Calendar, 13
29206376

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| KIRSTEN CURLEY, individually and on behalf of similarly situated individuals, ) | |
| ) | |
| *Plaintiff*, ) | No. 2024-CH-08282 |
| ) | |
| v. ) | |
| ) | Hon. Lynn Weaver Boyle |
| VEROGEN, Inc., a Delaware Corporation, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY,
FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

Plaintiff Kirsten Curley ("Plaintiff"), by and through her undersigned counsel, pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011). In support of her Motion, Plaintiff submits the following Memorandum of Law.

Dated: September 3, 2024                    Respectfully Submitted,

                                                            KIRSTEN CURLEY, individually and on
                                                            behalf of similarly situated individuals,

                                   By:      /s/ Joseph M. Dunklin
                                                            *One of Plaintiff's Attorneys*

FILED DATE: 9/3/2024 3:48 PM    2024CH08282

McGuire Law, P.C.
Myles McGuire
David L. Gerbie
Andrew Heldut
Joseph M. Dunklin
55 W. Wacker Drive, 9th Fl.,
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
dgerbie @mcgpc.com
aheldut@mcgpc.com
jdunklin@mcgpc.com

Lynch Carpenter, LLP
Katrina Carroll
katrina@lcllp.com
Kyle Shamberg
kyle@lcllp.com
111 W. Washington St., Ste. 1240
Chicago, IL 60602
Tel.: (312) 750-1265

Freed Kanner London
& Millen LLC
Jonathan M. Jagher
jjagher@fklmlaw.com
923 Fayette Street
Conshohocken, PA 19428
Tel.: (610) 234-6486

*Attorneys for Plaintiff and the Putative Class*

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR
A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**

This Court should certify a class of individuals whose genetic information was obtained by Verogen, Inc. ("Defendant") in violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("GIPA"). Defendant is a company that provides DNA comparison services through its consumer-facing website, GEDmatch.com. GEDmatch advertises that GEDmatch.com is "the place to explore your family history by matching DNA data you can get from a genetic DNA testing kit company like 23andMe or AncestryDNA. To use GEDmatch.com, users take a genetic test (from a variety of companies or providers) and download the results of that test to a standard DNA file—*i.e.*, a compressed ZIP file containing a full description of the user's genetic information. Next, users upload the DNA file to the GEDmatch website for processing. Within 24 hours, users can access analytical tools that compare their own genetic information to other DNA files within the GEDmatch database. But Defendant, by soliciting for Plaintiff and the class's genetic information, has violated the privacy rights set forth in GIPA. Making matters worse, Defendant has repeatedly violated GIPA by illegally soliciting and collecting the genetic information of thousands of Illinois residents. After Plaintiff learned of Defendant's wrongful conduct, she brought suit on behalf of a class of similarly situated individuals to put a stop to Defendant's collection of Illinois residents' genetic information in violation of GIPA, and to obtain redress for all persons affected by Defendant's conduct.

## I.   INTRODUCTION: GIPA

Having recognized the uniquely private and sensitive nature of genetic information – and the potential for harmful discrimination that such information may encourage among employers, insurers, and other interested parties – the Illinois General Assembly enacted GIPA to regulate the

1

collection and use of such genetic information. GIPA defines "genetic information" as information pertaining to: (i) an individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.[1]

Genetic information is a uniquely private and sensitive form of personal information. A person cannot change their genome if it becomes compromised, and the genetic information contained therein reveals a trove of intimate information about that person's health, family, and innate characteristics. GIPA seeks to protect persons from potential discrimination and other harmful consequences that can arise from the disclosure of such information. In disclosing the fact that Plaintiff and the members of the Class have undergone genetic testing, Defendant has violated their statutory right to genetic privacy.

In enacting GIPA, the Illinois Legislature recognized that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." See 410 ILCS 513/5(2). GIPA bestows a right to privacy in one's genetic information and a right to prevent the solicitation of, collection, or disclosure of such information.

## II.    FACTUAL BACKGROUND

### A.    The Underlying Misconduct.

Defendant is a company that provides DNA comparison services and tools, and operates

---

[1] 410 ILCS 513/10, by reference to 45 C.F.R. § 160.103.

2

the website GEDmatch.com. (*Complaint.* at ¶ 16.) GEDmatch advertises that GEDmatch.com is "the place to explore your family history by matching DNA data you can get from a genetic DNA testing kit company like 23andMe or AncestryDNA." (*Id.* at ¶ 17.) To use GEDmatch.com, users take a genetic test (from a variety of companies or providers) and download the results of that test to a standard DNA file—*i.e.*, a compressed ZIP file containing a full description of the user's genetic information. Next, users upload the DNA file to the GEDmatch website for processing. Within 24 hours, users can access analytical tools that compare their own genetic information to other DNA files within the GEDmatch database. (*Id.* at ¶ 18.) GEDmatch tells its users that "your privacy and security are paramount." To reassure users about the privacy of information submitted on its site, GEDmatch encourages users to use aliases and anonymous email addresses when using the site. (*Id.* at ¶ 19.)

However, unbeknownst to GEDmatch users, Defendant used technology pioneered by Meta Platforms, Inc. (parent company of Facebook herein "Meta" or "Facebook"), including the Facebook Pixel ("Pixel"), a piece of tracking code, embedded on thousands of websites, including that of GEDmatch, to illegally disclose the confidential Genetic Information of Plaintiff. (*Id.* at ¶ 20.) By default, the Pixel uses both first-party and third-party cookies to transmit website visitors' information to Facebook, and Facebook's Conversions Application Programming Interface ("CAPI") is automatically implemented when websites—such as GEDmatch—install the Pixel on their Website servers. (*Id.* at ¶ 20.) Plaintiff and other Class members who uploaded their DNA files to GEDmatch's website thought they were communicating only with GEDmatch. But Defendant, through the Pixel and/or CAPI, surreptitiously disclosed their identities and the fact that they were the subject of genetic tests to Facebook. (*Id.* at ¶ 25.)

In early 2022, Plaintiff Curley uploaded her DNA file to the GEDmatch website. In doing

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

FILED DATE: 9/3/2024 3:48 PM    2024CH08282

so, Plaintiff communicated information relating to her identity and, crucially, the fact that she had been the subject of a genetic test—all of which consist of Genetic Information and is protected under GIPA. Without her knowledge or permission, Defendant disclosed this Genetic Information, through use of Facebook's business tools (including Pixel and CAPI) to Facebook without her consent. (*Id.* at ¶ 32.) Despite Plaintiff's reasonable expectations that her communications with GEDmatch via its website were confidential and that such communications would not be disclosed to any third party, Defendant disclosed Plaintiff's and thousands of others' communications with GEDmatch, including the fact that they uploaded their DNA files and their identities. (*Id.* at ¶ 36.)

**B.      The Proposed Class**

Plaintiff brings this action on behalf of herself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

> All Illinois individuals who, during the applicable statute of
> limitations, (i) had a Facebook account; and (ii) uploaded their DNA
> file to GEDmatch.com according to Defendant's records.
> (Compl., ¶ 41.)

As explained below, the proposed Class satisfies each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Class can obtain appropriate redress for Defendant's unlawful conduct.

**III.    ARGUMENT**

**A.      Standards for Class Certification**

To obtain class certification, it is not necessary for a plaintiff to establish that he will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

4

FILED DATE: 9/3/2024 3:48 PM    2024CH08282

merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). As such, in determining whether to certify a proposed class, the Court should accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc*., 378 Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1)    The class is so numerous that joinder of all members is impracticable.
> (2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
> (3)    The representative parties will fairly and adequately protect the interest of the class.
> (4)    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard*

5

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

*RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

### B.    The Numerosity Requirement is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are thousands of members of the Class. (Compl., ¶ 40.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as

prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendant's records. Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C. Common Questions of Law and Fact Predominate

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: whether Defendant's conduct is subject to GIPA; whether Defendant disclosed Plaintiff's and the Class members' Genetic Information; whether Defendant discloses Genetic Information to advertisers and/or other third parties; whether Defendant obtained written authorization from Plaintiff and the other Class members before disclosing their Genetic Information; whether Defendant's violations of GIPA were willful or reckless; whether Defendant's violations of GIPA were negligent; whether Plaintiff and the Class members are entitled to damages and injunctive relief. (Compl., ¶ 47.) Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

has satisfied this hurdle to certification.

**D. Adequate Representation**

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Class, her genetic information was disclosed by Defendant. (Compl., ¶ 40.) Plaintiff's pursuit of this matter against Defendant demonstrates that she will be a zealous advocate for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Class, thus satisfying Section 2-801(3).

**E. Fair and Efficient Adjudication of the Controversy**

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure

FILED DATE: 9/3/2024 3:48 PM    2024CH08282

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of…protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those affected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of litigating their statutorily limited claims to be prohibitive, and multiple individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class is necessary to ensure that Defendant's conduct becomes compliant with GIPA, to ensure that the Class members' privacy rights in their genetic information are sufficiently protected, and to compensate those individuals who have had their statutorily-protected genetic privacy rights violated. Were this case not to proceed on a class-wide

basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to comply with the statute. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.    **CONCLUSION**

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: September 3, 2024                    Respectfully Submitted,

                                            KIRSTEN CURLEY, individually and on
                                            behalf of similarly situated individuals,

                              By:    /s/ Joseph M. Dunklin
                                     *One of Plaintiff's Attorneys*

MCGUIRE LAW, P.C.
Myles McGuire
David L. Gerbie
Andrew Heldut
Joseph M. Dunklin
55 W. Wacker Drive, 9th Fl.,
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
dgerbie @mcgpc.com
aheldut@mcgpc.com
jdunklin@mcgpc.com

LYNCH CARPENTER, LLP
Katrina Carroll
katrina@lcllp.com

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

Kyle Shamberg
kyle@lcllp.com
111 W. Washington St., Ste. 1240
Chicago, IL 60602
Tel.: (312) 750-1265

FREED KANNER LONDON
& MILLEN LLC
Jonathan M. Jagher
jjagher@fklmlaw.com
923 Fayette Street
Conshohocken, PA 19428
Tel.: (610) 234-6486

*Attorneys for Plaintiff and the Putative Class*

11

FILED DATE: 9/3/2024 3:48 PM   2024CH08282

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on September 3, 2024, I caused the foregoing *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* to be electronically filed with the Clerk of the Circuit Court of Cook County using the CM/ECF system.

/s/ Joseph M. Dunklin

FILED
9/23/2024 10:54 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH08282
Calendar, 13
29474270

Case: 1:24-cv-09508 Document #: 1-1 Filed: 10/04/24 Page 33 of 33 PageID #:97

FILED DATE: 9/23/2024 10:54 AM   2024CH08282

**Appearance and Jury Demand \***                                                    **(09/01/21) CCG 0009**

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Chancery _____ **DEPARTMENT/** 1st **DISTRICT**

Kirsten Curley, individually and on behalf of similarly situated individuals,

|  |  |
|---|---|
| Plaintiff | Case No. ___2024CH08282___ |
| | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Verogen, Inc., a Delaware Corporation | Court Date: _____ Room No.: _____ |
| Defendant | 50 W. Washington St., Chicago, Illinois 60602 |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND \*

☑ General Appearance          ☐ 0900 - Fee Paid                              ☐ 0904 - Fee Waived
                               ☐ 0908 - Trial Lawyers Appearance - No Fee   ☑ Twelve-person Jury
☑ Jury Demand \*               ☑ 1900 - Appearance and Jury Demand/Fee Paid  ☐ Six-person Jury
                               ☐ 1904 - Appearance and Jury Demand/No Fee Paid

The undersigned enters the appearance of:   ◉ Plaintiff   ○ Defendant

Litigant's Name: ___Kirsten Curley___

Signature: /s/ Jonathan M. Jagher

☑ Initial Counsel of Record          ☐ 2810  Rule 707 Out-of-State Counsel
                                            (pro hac vice)

☐ Additional Appearance              ☐ Substitute Appearance

◉ Atty. No.: ___49473___

Name: ___Jonathan M. Jagher___

Atty. for (if applicable):

___Kirsten Curley___

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Address: ___923 Fayette Street___

City: ___Conshohocken___

State: __PA__  Zip: __19428__  Phone: ___610.234.6486___

Primary Email: ___jjagher@fklmlaw.com___

**\* Strike demand for trial by jury if not applicable.**
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ Jonathan M. Jagher

Attorney for  ◉ Plaintiff   ○ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**